IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DONDERRIOUS WILLIAMS, # 251429,   *
                                  *
    Plaintiff,            *
                                  *
vs.                               *   CIVIL ACTION NO. 18-00432-KD-B
                                  *
CYNTHIA D. STEWART, *et al.*,       *
                                  *
    Defendants.           *

## REPORT AND RECOMMENDATION

Plaintiff Donderrious Williams, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. (Doc. 1). This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). It is recommended that this action be dismissed without prejudice prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief can be granted.

I.   **Complaint. (Doc. 1).**

Williams, who is now incarcerated at St. Clair Correctional Facility ("St. Clair") (see Doc. 5), filed the instant action while he was incarcerated at Holman Correctional Facility ("Holman") based on events that allegedly occurred at Holman. In the complaint, Williams names as Defendants Cynthia D. Stewart, Warden

1

III at Holman; Terry Raybon, Warden II at Holman; and Jefferson Dunn, the Commissioner of the Alabama Department of Corrections ("ADOC").  (Doc. 1 at 5).  He seeks "money damages, discipline for defendants, [the repair of the] segregation unit to liv[]able conditions, [and] release from restrictive housing."  (Id. at 7).

According to Williams, on June 13, 2018, there was an assault on an inmate in Dorm A at Holman.  (Id. at 4).  Williams was charged with the assault, and as a result, he was placed in a single cell on June 20, 2018.  (Id.).  According to Williams, he was found not guilty of the assault in a disciplinary hearing on July 3, 2018, because the arresting officer stated that she did not witness the assault and had no knowledge of the investigation. (Id. at 4, 10-11 (disciplinary report)).  The not-guilty verdict was approved by Defendant Stewart on July 12, 2018.  (Id. at 10). Williams thus claims that someone wrote him a false disciplinary. (Doc. 1-3 at 4).

On July 11, 2018, Williams was served with a reclassification notice indicating that he would be held in preventative status because of the incident report and would remain in the restrictive housing unit.[1]  (Doc. 1 at 4, 12 (notice of reclassification

---

[1] The terms "preventative status" and "restrictive housing unit" have not been defined by Williams.  Nor did the Court find these on terms on ADOC's website.

hearing)).  The notice explained that "[y]ou did not receive disciplinary action and/or you were found not guilty of the infraction.  Per incident report HCF-18-00769 as indicated by the warden, you were involved in the incident that resulted in acts of violence within Holman CF.  Based on safety and security concerns, you are being re-classed . . . ."  (Id. at 12).

Williams argues that he is being improperly detained in the restrictive housing unit because he was found not guilty due to non-involvement in the assault incident.  (Doc. 1-2 at 1).  This, he claims, is a violation of his rights as set out in the Classification Manual.[2]  (Doc. 1 at 8).  Williams also alleges that

---

[2] Williams copied a paragraph from the Classification Manual, Other Reviews for Reclassification, which provides:

> In any case where a disciplinary or rule violation has been voided or otherwise overturned as a result of a technicality or procedural requirement, but where the behavior indicates the need for a more restrictive placement or an increase in custody level, the inmate may be classified as deemed appropriate based upon documentation of the specific act or behavior itself (see Administrative Regulation 403, procedures for inmate rule violations).  This will not apply when disciplinar[ies] are voided for an inability to prove that the specific act of behavior actually occurred (such as when the disciplinary for a drug positive is voided because of failure to follow proper chain of custody).

Statements from The Male Classification Manual (2018), pp. 17-18. (Doc. 1 at 8).

he was not allowed to attend his reclassification hearing and to present evidence on his own behalf. (Id.). And, Williams alleges that, at the hearing, the victim told prison officials that Williams was not involved in the assault. (Doc. 1-2 at 1).

Williams alleges that the cell he was placed in for preventative status had "live wires hanging from [a] light, no cleaning supplies, [a] sink and toilet leaking water, walls [with] writing, dirt and food on them[]" (Doc. 1 at 4), and a rusty table. (Doc. 1-1 at 2). Furthermore, because of Williams's preventive status, he was not allowed haircuts, phone calls, or daily showers, and he could not participate in church, "ABE," or other ADOC activities. (Doc. 1 at 4; Doc. 1-1 at 2). He maintains that he is "being forced to live like an animal" (Doc. 1-1 at 2) in an unsafe cell. (Doc. 1 at 8).

Williams asserts that it is punishment to be held in restrictive housing without a safety reason or a disciplinary, that his privileges were taken away based solely on opinions formed as a result of the incident report, despite the victim's report that he was not involved in the assault. (Doc. 1-2 at 1-2). For the reasons set forth above, Williams requests to be returned to population or transferred to a facility that meets his needs. (Id. at 2, Doc. 1-3 at 4).

II.  **Standards of Review Under 28 U.S.C. § 1915(e)(2)(B)**.

Because Williams is proceeding *in forma pauperis*, the Court is reviewing his complaint (Doc. 1) under 28 U.S.C. § 1915(e)(2)(B). Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or in fact." Neitzke v. Williams*,* 490 U.S. 319, 325 (1989).[3] A claim is frivolous as a matter of law where, *inter alia,* the defendants are immune from suit or the claim seeks to enforce a right that clearly does not exist.  Id. at 327.

A complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.  Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997).  To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That is, "[f]actual

---

[3] Neitzke's interpretation of 28 U.S.C. § 1915(d) is applied to § 1915(d)'s superseding statute, 28 U.S.C. § 1915(e)(2)(B).  See Bilal v. Driver, 251 F.3d 1346, 1348-49 (11th Cir. 2001), cert. denied, 534 U.S. 1044 (2001).

allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 555, 557 (second brackets in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.  Furthermore, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted.  Jones v. Bock, 549 U.S. 199, 215 (2007).

When considering a *pro se* litigant's allegations, a court holds them to a more lenient standard than those of an attorney, Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), but it cannot "rewrite an otherwise deficient pleading in order to sustain an action."  GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998), overruled on other grounds by Iqbal, 556 U.S. 662 (2009).  Furthermore, a court treats as true a plaintiff's factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements.  Iqbal, 556 U.S. at 681.  In addition, a *pro se* litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure."  Moon v. Newsome, 863 F.2d 835,

837 (11th Cir. 1989), <u>cert. denied</u>, 493 U.S. 863 (1989).

**III. <u>Analysis</u>.**

    **A. <u>No Violation of Due Process</u>.**

The chief claim in Williams's complaint is for the lack of due process when he was reclassified in his absence to preventative custody, which resulted in him being placed in the restrictive housing unit. "The Fourteenth Amendment prohibits any State from depriving a person of life, liberty, or property without due process of law." <u>Meachum v. Fano</u>, 427 U.S. 215, 223 (1976); <u>see</u> U.S. Const. amend. XIV, § 1. In the present case, Williams's allegations regarding his classification status are consistent with a claim for a deprivation of a liberty interest, as compared to claims for the loss of life or property.

A liberty interest may arise from two sources, the Due Process Clause itself and through the State's creation. <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005); <u>Meachum</u>, 427 U.S. at 223-227. With respect to the Constitution/Due Process Clause, an inmate does not have a right based on the Constitution itself to a certain custody classification. <u>Meachum</u>, 427 U.S. at 225 (holding that there is no liberty interest arising from the Due Process Clause in an inmate's transfer from a low- to a maximum-security prison where conditions were substantially less agreeable because

"[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (no right exists based on the Constitution in regard to a prisoner's classification and eligibility for rehabilitative programs); Kramer v. Donald, 286 F. App'x 674, 676 (11th Cir. 2008) (per curiam) (there is "no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison"); Parker v. Dunn, 2018 U.S. Dist. LEXIS 132717, at *19, 2018 WL 4189671, at *6 (M.D. Ala. Aug. 6, 2018) (an inmate "had no protected interest in avoiding close custody simply because his classification was based on an assault of an officer while he was housed at a different facility"), report and recommendation adopted, 2018 U.S. Dist. LEXIS 148936, 2018 WL 4186402 (M.D. Ala. Aug. 31, 2018). Moreover, "the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right" has been rejected by the Supreme Court. Moody, 429 U.S. at 88 n.9.

In finding that there is no right directly under the Constitution not to be reclassified to a more restrictive custody, the Court must determine if there exists a State-created liberty interest to which due process attaches. In Sandin v. Conner, 515

U.S. 472 (1995), the Court reasoned that a State-created liberty interest "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. The Eleventh Circuit elaborated on the Sandin Court's reasoning, stating:

> [T]he Supreme Court has made clear that there are two circumstances in which a prisoner can be further deprived of his liberty such that due process is required. The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state.

Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999) (internal citations omitted). The Eleventh Circuit recognized that the inquiry into whether a prisoner has been deprived of a liberty interest is difficult because the prisoner is already deprived of his liberty by his conviction. Id.

In Sandin, *supra*, a disciplinary case, the inmate was sentenced to thirty days in disciplinary segregation after being

found guilty of a disciplinary infraction.  Sandin, 515 U.S. at 475.  The inmate challenged his disciplinary determination, claiming he was deprived of due process in his disciplinary hearing.  Id. at 476.  In analyzing his claim, the Sandin Court looked to whether, as result of the disciplinary sentence, the inmate suffered an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."  Id. at 484.  Assessing the duration of the inmate's sentence and the conditions under which he was held, the Court determined that a liberty interest did not exist.  Id. at 487.  Specifically, the court found that further restriction of the inmate to thirty days in segregation was similar to the amounts of lock-down time that the general population inmates experienced; the Court thus reasoned that the thirty-day disciplinary sentence did not work a major disruption in the plaintiff's environment.  Id. at 486.  The Court also found that the conditions in disciplinary segregation chiefly mirrored those in administrative segregation and protective custody.  Id.  Thus, the Court concluded "[t]he regime to which he was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life."  Id. at 487.  In the absence of a State-created liberty interest not to be placed in

disciplinary segregation, the plaintiff's claims of due process violations in how the hearing was conducted failed to state a claim upon which relief could be granted.  Id. at 487.

Although the Sandin Court was concerned with a disciplinary sentence and disciplinary segregation, the Sandin decision is applicable to Williams's claims in this case arising from placement in preventative custody and the restrictive housing unit.  See Wilkerson v. Goodwin, 774 F.3d 845, 852 (5th Cir. 2014) ("[T]he Supreme Court and this court have made clear that there is no dispositive bright line between deprivations resulting from initial custodial classifications and deprivations resulting from disciplinary measures.  Notably, in Wilkinson v. Austin, the plaintiff prisoners asserted that placement in a Supermax facility in Ohio violated their due process rights.  545 U.S. at 213, 125 S.Ct. 2384.  Placement in the Supermax facility was made both by initial security classification and by subsequent reclassification based on conduct while in prison.  Id. at 215-16, 125 S.Ct. 2384. The Supreme Court never indicated that the liberty interest analysis was different when addressing an initial security classification or an administrative custodial determination, as opposed to a punitive disciplinary action."); Matthews v. Moss, 506 F. App'x 981, 983 (11th Cir. 2013) (per curiam) (applying

Sandin to claims arising from confinement to administrative segregation).

Turning to Williams's case, it is unclear exactly how long he was in Holman's restrictive housing unit, although Williams alleges that he was placed in the restrictive housing unit on June 20, 2018 and was still being held there when he signed his complaint in August 2018. (See Doc. 1-1 at 1; Doc. 1-2 at 1-2; Doc. 1-3 at 4). He notified the Court of a change of address to Limestone Correctional Facility on January 9, 2019. (Doc. 4). In addition, he has not offered any explanation describing the differences in custodies and in their attendant restrictions from his placement in preventative custody and in the restrictive housing unit. His complaint is also devoid of any allegations concerning the conditions of confinement for other custody classifications and/or placements at Holman. Furthermore, the alleged conditions in his cell, while not pleasant, which will be discussed *infra*, are not egregious. Therefore, he has not shown that he had a liberty interest in not being reclassified to preventative custody and placed in the restrictive housing unit.

In the absence of a liberty interest, Williams was not entitled to due process. Thus, his claims based on procedural violations are due to fail. For example, Williams asserts that he

was not at the classification hearing where he was reclassified even though the 12 Hour Advance Notification of Pending Reclassification states that "[a]t the classification meeting you will be given an opportunity to be heard, to present witnesses and to present documentary evidence." (Doc. 1 at 12). Williams has not identified any other source for his right to be present at the reclassification hearing, even though he quotes from the Classification Manual for another point. (See id. at 8). He merely mentions that he has a right to be present at the hearing. (Id.; Doc. 1-2 at 1; Doc. 1-3 at 2, 4). In the absence of a right inherent in the Due Process Clause and of a liberty interest created by the State, there is no right to be present at the reclassification hearing. Moody, 429 U.S. at 88 n.9.

Furthermore, even if Williams had alleged a violation of a specific ADOC regulation or Alabama statute, the law holds that "not every violation of a state agency of its own rules rises to the level of a due process infringement." Smith v. Georgia, 684 F.2d 729, 732 n.6 (11th Cir. 1982). Thus, such a violation of a regulation or statute "does not prove a violation of a federal constitutional right," which is necessary in order to state a § 1983 claim. Harris v. Birmingham Bd. of Educ., 817 F.2d 1525, 1527 (11th Cir. 1987). As a consequence, Williams has failed to

state a claim for a violation of his due process rights because he lacks a liberty interest in not being placed in preventative custody or in a restrictive housing unit.

**B. No Violation of the Eighth Amendment.**

Williams asserts that he was subjected to "cruel and unusual punishment" and "unsafe conditions." (Doc. 1 at 5-6). As best the Court can discern, these assertions are connected to the conditions in Williams's cell upon his placement in the restrictive housing unit. The conditions of which he complains include live wires hanging from his light, no cleaning supplies, water leaking from his sink and toilet, a rusty table, and walls with writing, dirt, and food on them. (Id. at 4; Doc. 1-1 at 2). He also complains that while in preventative custody, he could not get haircuts, use the phone, take daily showers, or participate in church, "ABE," or other ADOC activities. (Doc. 1 at 4; Doc. 1-1 at 2). He maintains that he was "forced to live like an animal" (Doc. 1-1 at 2) in an unsafe cell. (Doc. 1 at 8).

The Constitution does not require that places of incarceration be comfortable. Rhodes v. Chapman, 452 U.S. 337, 349 (1981). All that is required is for the State to furnish "its prisoners with reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety[.]" Newman v.

<u>Alabama</u>, 559 F.2d 283, 291 (5th Cir. 1977), <u>rev'd in part sub nom.</u>
<u>Alabama v. Pugh</u>, 438 U.S. 781 (1978);[4] <u>see</u> <u>Helling v. McKinney</u>,
509 U.S. 25, 32 (1993); <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1574
(11th Cir. 1985), <u>cert. denied</u>, 475 U.S. 1096 (1986).

In order to prevail on an Eighth Amendment inhumane conditions
of confinement claim, an inmate must satisfy an objective component
and a subjective component. <u>Farmer v. Brennan</u>, 511 U.S. 825, 836
(1994). For the objective component, "a prisoner must allege a
prison condition that is so extreme that it poses an unreasonable
risk of serious damage to the prisoner's health or safety."
<u>Richardson v. Johnson</u>, 598 F.3d 734, 737 (11th Cir. 2010).
Unconstitutional conditions are those conditions that deprive an
inmate of "the minimal civilized measure of life's necessities,"
alone or in combination, when considered "under the contemporary
standard of decency[.]" <u>Rhodes</u>, 452 U.S. at 347. But, to the
extent that conditions are only "restrictive and even harsh, they
are part of the penalty that criminal offenders pay for their
offenses against society[]" and do not violate the Constitution.
<u>Id.</u> "Nothing so amorphous as 'overall conditions' can rise to the

---

[4] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir.
1981) (en banc), the Eleventh Circuit adopted as binding precedent
the decisions of the former Fifth Circuit handed down prior to
October 1, 1981.

level of cruel and unusual punishment when no specific deprivation of a single human need exists." Wilson v. Seiter, 501 U.S. 294, 305 (1991).

The subjective component is derived "from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" Farmer, 511 U.S. at 834 (citation omitted). Because the Eighth Amendment proscribes the unnecessary and wanton infliction of pain, "a prison official must have a 'sufficiently culpable state of mind'" for the Eighth Amendment to be violated. Id. When a prisoner's conditions of confinement are at issue, the plaintiff must show that the prison official's "state of mind is one of 'deliberate indifference' to inmate health or safety." Id.

Turning to Williams's allegations, several things are missing concerning the physical conditions of his cell. He does not inform the Court of the duration of his stay in his cell nor the amount of time spent daily in his cell. He also fails to offer facts to support his claims. In other words, he merely identifies certain conditions but does not show how the conditions are unsafe or unsanitary for him. Further, he relates no injury that he suffered as a consequence of his confinement.

With respect to the limitations or restrictions that Williams experienced as a result of his confinement in the restrictive

housing unit, his conclusory allegations are unsupported and do not demonstrate an extreme deprivation necessary to make out an Eighth Amendment claim or, if considering his conditions together, a complete deprivation of a single human need.  See Chandler v. Crosby, 379 F.3d 1278, 1297 (11th Cir. 2004) (an extreme condition was not made out by Florida's death-row inmates who complained about an inadequate ventilation system for their cells' summer temperatures that reached eighty degrees at night and eighty-five or eighty-six degrees during the day except for nine percent of the time when temperatures were over ninety degrees, reaching ninety-five degrees but not exceeding hundred degrees, as the temperatures were what is expected in a Florida residence without air conditioning during the summer).

Thus, Williams's allegations are not sufficient to allow the Court to draw the conclusion that his conditions are "so extreme that [they] pose[] an unreasonable risk of serious damage to the prisoner's health or safety."  Richardson, 598 F.3d at 737. Because the objective component has not been satisfied, the Court shall forego a discussion of the subjective component.  See Chandler, 379 F.3d at 1297 (declining to discuss the subjective component when the inmate failed to meet his burden under the objective component).  The Court thus finds that Williams has

failed to state an Eighth Amendment conditions-of-confinement claim.

## C. <u>Lack of a Causal Connection</u>.

To state a § 1983 claim, a causal connection must be shown between a defendant's actions, orders, customs, or policies and a deprivation of the plaintiff's constitutional rights. <u>Zatler v. Wainwright</u>, 802 F.2d 397, 401 (11th Cir. 1986) (requiring proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation). This causal connection may be shown through the state actor's personal involvement in the acts resulting in the violation of the constitutional right. <u>Id.</u> The causal connection may also be shown when an official's policy or custom is deliberately indifferent to an inmate's constitutional rights. <u>Id.</u>

In the present action, Williams names as Defendants Cynthia D. Stewart, Warden III at Holman; Terry Raybon, Warden II at Holman; and Jefferson Dunn, the Commissioner of ADOC. (Doc. 1 at 5). These individuals are generally known as the policymakers for an individual institution or for ADOC. However, Williams's complaint does not contain any allegations about a policy or custom, nor are there direct allegations showing personal involvement. Furthermore, no facts are alleged describing how

each Defendant was deliberately indifferent to Williams's health or safety or to his due process rights. See Richardson, 598 F.3d at 738 (dismissal of the prison commissioner was appropriate because no facts were alleged showing his personal involvement in the inmate's injuries or that the inmate's injuries were the result of an official policy that he established).

The undersigned finds that Williams' references to any individual Defendant are minimal at best. At the outset, he claims that each Defendant violated his "reclass procedures, cruel and unusual punishment, unsafe conditions, false imprisonment, [and] abusing [] authority." (Doc. 1 at 5-6). He further alleges that "[s]aid warden/wardens are in violation of the Alabama Department of Corrections", and that he is giving Defendant Stewart notice of the filing of a federal lawsuit against her for "improper use of [her] rank and unsafe environment, and [cruel and unusual] punishment." (Doc. 1-2 at 1; Doc. 1-1 at 1). Also, Defendant Stewart's name does appear on the disciplinary report approving the not-guilty verdict in favor of Williams. (See Doc. 1 at 10). However, considering the lack of specific allegations directed to each Defendant and the absence of allegations containing legally necessary information for stating a claim against each Defendant, the undersigned finds that Williams has not alleged a causal

19

connection between any Defendant's acts or omissions and a deprivation of his rights; therefore, he has not stated a viable § 1983 claim.

**D. Claim for Injunctive Relief Is Moot.**

In Williams's request for relief, he asks the Court to "fix [the] segregation unit to liv[]able conditions [and] release [him] from restrictive housing." (Doc. 1 at 7). After Williams filed this action, he was transferred to Limestone Correctional Facility, and he was later transferred to St. Clair. (See Docs. 4, 5). Due to his transfer away from the restrictive housing unit at Holman, the requests for injunctive relief are moot. See Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988)("[A]n inmate's request for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once an inmate has been transferred (citation and internal quotation marks omitted)), cert. denied, 488 U.S. 1046 (1989). Accordingly, Williams's requests for injunctive relief are due to be dismissed as moot.

Furthermore, his request for Defendants to be disciplined is an inappropriate request in this action. See Body v. Thornton, 2013 U.S. Dist. LEXIS 65297, at *15, 2013 WL 1915014, at *5 (S.D. Ala. 2013); Newman, 559 F.2d at 288 ("We all understand, of course, that federal courts have no authority to address state officials

out of office or to fire state employees or to take over the performance of their functions."); <u>Harris v. Whitehead</u>, 2007 U.S. Dist. LEXIS 57967, 2007 WL 2300964, at *1 n.1 (M.D. Ala. Aug. 8, 2007) (holding that the federal court had no authority to discharge prison officials, as that decision was for their supervisors to make). Therefore, to the extent that Williams requests that the Court become involved in disciplining State employees who are a part of the executive branch of State government, the Court lacks the authority to do so.

## IV. **Conclusion**.

Based upon the foregoing reasons, it is recommended that this action be dismissed without prejudice prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

A dismissal without prejudice provides a plaintiff with an opportunity to file an amended complaint that cures the noted deficiencies in the complaint and states a claim upon which relief can be granted or to re-file his action at a later date but within two years from when his claims arose, on or about June 13, 2018. <u>See</u> <u>Lufkin v. McCallum</u>, 956 F.2d 1104, 1105 n.2, 1108 (11th Cir. 1992) (noting that the statute of limitations for a § 1983 action filed in Alabama is two years), <u>cert. denied</u>, 506 U.S. 917 (1992).

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **11th** day of **October, 2019.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
